MALEBRAN (UNITED STATES v.). See Case No. 15,711.

## Case No. 8,987.

### The M. A. LENNOX.

[4 Ben. 190.] [1]

District Court, E. D. New York. May, 1870.

NEGLIGENCE—TOW BOAT AND TOW—DELAY IN CASTING OFF HAWSER.

1. Where a steamtug was employed to tow out a ship, which was lying stern out at pier 37, East river, and, having attached a hawser to her stern, towed her out stern foremost into the river, and then cast off the hawser, and attempted to come alongside and take another hawser from the ship's starboard bow, and the hands on board the ship failed to promptly catch the heaving-lines, and before the hawser could be properly attached, the ship drifted stern foremost against a pier on the opposite side of the river, and received injury, *held*, that the in-

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

jury was occasioned by negligence on the part of the tug, in towing the ship so far out into the river, before casting off the hawser. It should have been cast off as soon as the ship had fairly cleared the New York piers.

[Cited in The Merrimac, Case No. 9,478.]

2. The tug was liable for the damages.

In admiralty.

J. T. McGowan, for libellant.

Goodrich & Wheeler, for respondents.

BENEDICT, District Judge. This is an action brought to recover of the propeller M. A. Lennox the damages alleged to have arisen from her negligence in transporting the ship Corsica in the East river, on the 11th of December, 1849.

The facts proved, so far as they are necessary to disclose what I consider to be the controlling feature of the case, are these: The Corsica was a large ship, lying at pier 37, on the New York side of the East river, with her stern out, and was desirous of being transported thence to Greenpoint. At a proper time of tide, and when there was little or no wind, fog, or other impediment, the propeller M. A. Lennox undertook the transportation of the ship. She accordingly made fast to a hawser, which was put out from the ship's quarter, and so hauled the ship out of the slip stern foremost. The ship was then towed a certain distance out into the river, stern foremost, and then the tug stopped, cast off the hawser, and attempted to get alongside of the ship, to take a second hawser from her starboard bow, in order to tow her upon a hawser to her place of destination. The sternway of the ship, and her distance out in the river at the time the hawser was cast off by the tug, proved to be such that, before the tug got hold of the ship by the second hawser, and acquired headway, the tide, which runs up past the Brooklyn piers at that time and place, carried the ship upon one of the Brooklyn piers, known as Wetmore's dock, whereby her rudder was injured, and the damages sued for sustained.

It is manifest from this statement, that, whatever other negligence there might have been on this occasion, it was negligence to take this large ship so far out into the river with the stern hawser, and that this negligence was a cause of the disaster which followed. Evidence has been introduced to show that the failure of the hands on the ship to promptly catch the heaving-lines which were thrown from the tug after the stern hawser was dropped, by means of which the second hawser was to be taken on board the tug, prevented the tug from getting hold of the ship by the bow hawser, in time to keep her off the piers; but if this be so, still it was negligence to take the ship so near to the Brooklyn side that a failure to catch the heaving-line at the first or second throw would result in her striking the piers. The safety of such a ship should not have been made dependent upon the chance of catching a heaving-line when thrown.

In this view of the case, its determination must depend upon the question whether the tug is responsible for the distance which the ship was towed upon the stern line before it was cast off; and my opinion is that, under the circumstances the tug is so responsible. The manoeuvre which this tug undertook to perform was, to start the ship out by a stern line, and then drop it and make fast to a bow line, and get headway on the ship before she would run across the river. It was a manoeuvre not unattended with risk, but which could have been accomplished by the exercise of care and skill, and it manifestly required for its successful accomplishment that the stern hawser should be cast off at the earliest possible moment. But, instead of dropping the hawser as soon as the ship was clear of the New York piers, the tug kept towing until the ship was two-thirds of the way over to Brooklyn, and where the ordinary mishap of failing to catch a heaving-line resulted in placing her upon the Brooklyn piers. It was the duty of the master of the tug to determine the distance he would require for his manoeuvre, i. e., to stop, drop the stern hawser, turn his boat, and make fast to the bow line.

Ordinary prudence required the hawser to be dropped at the earliest moment after the ship had fairly cleared the New York piers; and I find nothing in the evidence which justifies the tug in holding on, as she did, until the ship was in a position of danger; for a ship cannot be considered as otherwise than in danger when she is drifting towards piers, and so near as to require not only great diligence but good fortune to prevent her from striking. I hold the tug, therefore, to be responsible for lack of proper care in taking the ship so far out into the stream before she dropped the hawser. In arriving at this conclusion, I have not overlooked the defence which has been sought to be rested upon evidence tending to show that the ship was being transported under the direction of her own master, and that, in point of fact, the master of the tug acted under the direction of the master of the ship in determining the distance out to which the ship was taken. A careful consideration of the testimony given by the various witnesses has convinced me that there was nothing in the action of the master of the ship, on this occasion, which can absolve the master of the tug from the responsibility of a negligent performance of the manoeuvre which he undertook. It is true that the master of the ship was on board the ship, and gave some orders in regard to the hauling of the ship, as she was coming out of the dock, but I am satisfied of the correctness of the master's statement, that he told the tug to drop the hawser as soon as the ship was clear of the New York piers, and nothing occurred which

would warrant the captain of the tug in supposing that the master of the ship had undertaken to say how far out the tug should go before turning to take the bow line, or had in any way made himself responsible for the nearness of his ship to the Brooklyn piers at the time the tug stopped towing. The manoeuvre of shifting the position of the tug from that of towing by the stern hawser to that of towing ahead was a manoeuvre which the master of the tug knew he would be obliged to perform when he took hold of the stern line. If not responsible for the mode of taking the ship out upon such a line, which was clearly improper, he is certainly responsible for any want of due care and skill displayed in making the necesssary change of his position, and such want of care is shown in his taking the ship so far out into the stream before he stopped towing. The decree must, accordingly, be for the libellant, with an order of reference, to ascertain the damages.